IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

UNITED STATES OF AMERICA )
)
    v. ) CASE NO.
) 5:21-CR-009-LGW-BWC-16
JUAN FRANCISCO ALVAREZ CAMPOS )

<u>MOTION TO DISMISS FOR VIOLATION OF FIFTH AMENDMENT</u>

    Comes now Defendant Juan Francisco Alvarez Campos, by and through undersigned counsel, and hereby files this Motion To Dismiss for Violation of the Fifth Amendment. As will be set out below, although Mr. Campos's name is found in the "indictment", no evidence was presented to the Grand Jury indicating that he had committed any crime. While Defendant recognizes the limits to Grand Jury challenges, this is the classic case of a captive Grand Jury indicting a "ham sandwich" when asked to do so by a prosecutor. <u>United States v. Laurent</u>, 861 F. Supp. 71, 89-90 (E.D. N.Y. 2011)(Weintstein, J.). A review of the indictment and the materials presented to the Grand Jury demonstrates that Mr. Campos's Fifth Amendment rights were violated. Despite the language in that Amendment to the Constitution, the charging document here was not an indictment "<u>of</u> a Grand jury". Instead, this was a document with Mr. Campos's name on it which was then signed by the Grand Jury foreperson despite no showing that

Defendant engaged in any crime. This Court should therefore dismiss the indictment against Mr. Campos.

Mr. Campos will first review the indictment. Next, he will discuss the single place in the 965 pages of Grand jury transcripts where his name is mentioned. Finally, Defendant will demonstrate that he was not indicted by an independent Grand Jury. Instead, the Grand Jury signed off on the document prepared by the Government which included his name, even though no evidence showed he has committed any crime. Under these circumstances, the Fifth Amendment was violated and this Court must dismiss the indictment against Mr. Campos.

**THE INDICTMENT**

The Court is aware of the 50-page 24-Defendant indictment in this matter. The indictment alleges a far-flung scheme to supposedly engage in mail fraud and money laundering as part of a forced labor trafficking scheme. All 24 Defendants are named in three separate conspiracies (mail fraud, forced labor and money laundering). A few Defendants are named in substantive wire fraud or forced labor crimes. Three Defendants are charged with trying to influence a Grand Jury Witness. Mr. Campos is named only in the three conspiracy charges, the objects of which were to commit mail fraud, forced labor crimes and money laundering.

In its "speaking indictment" the Government sets out in paragraphs 14-37 its basic view of both the allegations and the role of each Defendant.[1] Paragraph 29 discusses Mr. Campos. The indictment alleges that Mr. Campos is an illegal alien,[2] that he "supervised foreign workers who entered the United States under the H-2A visa program", and that he was an "associate" of the "Rojas family and Defendant Brett Donavan Bussey."

Paragraphs 63-a through 63-iii allege the "overt acts" allegedly in furtherance of the supposed mail fraud conspiracy set out in the first Count. Mr. Campos is not alleged to have committed any overt act.

Counts 2-7 allege substantive mail fraud crimes. Mr. Campos's name is not found in this part of the indictment.

Count 8 alleges a conspiracy against all 24 Defendants to commit forced labor law violations. Other than being named as a Defendant, this Count does not allege that Mr. Campos did anything. The same is true for the substantive forced labor crimes.

Paragraphs 74-76 allege a money laundering conspiracy. All 24 Defendants are named in this Count. Again, other than being

---

[1] Mr. Campos is filing separate motions which claim misjoinder or otherwise request severance of his case from most other Defendants.
[2] The Government did not allege any crime committed pertaining to Defendant's immigration status. If this matter proceeds to trial Mr. Campos will demonstrate he is not "illegal".

3

named as one of the Defendants charged in this Count nothing else is alleged pertaining to Mr. Campos.

Reduced to the essentials, the indictment alleges a series of crimes, some of which were supposedly committed by "the Rojas family" and Brett Bussey (and others). Mr. Campos allegedly was an "illegal alien", he "supervised workers", and was an "associate" of the Rojas family and Bussey. Defendant will next turn to what was presented to the Grand Jury.

### **EVIDENCE PRESENTED TO THE GRAND JURY**

The Court is aware of the extraordinarily voluminous discovery in this matter. Despites its complexity, Defendant believes he has reviewed everything presented to the Grand Jury which returned this indictment.

It appears that there were 33 separate evidentiary presentations to the Grand Jury. The grand jury transcripts total 965 pages. In these 965 pages Juan Francisco Alvarez Campos was mentioned <u>one time</u>.

As is often the situation, one of the case agents wrapped up the years-long presentation to the Grand Jury. The agent provided detailed background on the investigation. The agent discussed the proposed charges, and recounted evidence against the other Defendants. Pages 57-58 of the agent's testimony is the only place where he mentions Mr. Campos. Again, this is the only reference

4

to Mr. Campos in the 33 transcripts of what was presented to the Grand Jury.

The case agent told the Grand Jurors that Brett Bussey filed labor petitions for co-Defendant Maggie Cardenas, who the agent had already identified as part of "the Rojas family.". Here is what followed that answer:

Q. Juan Campos, is he related to the Rojas family?
A. yes.
Q. Dating one of the—or married to one of the daughters—
A. Yes, he is.
Q. --Delia's daughters, correct? And he was an illegal alien; is that right?
A. That's correct.
Q. Despite being an illegal alien, he was in the United States and supervising and managing workers out in the field; is that correct?
A. That's correct.
Q. And he was an associate of the Rojas family and Defendant Brett Bussey, correct?
A. That's correct.

The Rojas "daughter" to whom Mr. Campos is married is co-Defendant Margarita Rojas Cardenas. The Grand Jury heard significant evidence linking her to alleged crimes. Furthermore, the Grand Jury heard evidence about her "husband". The problem is that this "husband" was not Mr. Campos. More importantly, nothing presented to the Grand Jury linked Mr. Campos to anything that this "husband" did.

Page 17 of the case agent's testimony is where he discussed a "husband of Maggie Rojas that went by the name of Don Goyo".

This person supposedly told workers they would not be paid if they did not finish picking a row of onions. At pages 19-20 the case agent explained that Don Goyo (Maggie's boyfriend or husband) had a gun which he would show and shoot into the air "to scare the workers." At page 25 the case agent testified that "Don Goyo" (the boyfriend or husband of Maggie) would ride an ATV into the fields to scare the workers with his gun. Absolutely nothing connected this mysterious "Don Goyo" with Mr. Campos (who was not even in Georgia for these events). Despite the discussion of "Don Goyo", nothing links Mr. Campos to the charges.

Again, Mr. Campos is fully cognizant of limits placed on challenges to an indictment. Despite these limits, Mr. Campos will demonstrate that this is one of those rare cases where the constitutional requirement for indictment "of a Grand Jury" was violated. The charges against Mr. Campos were not the product of deliberation by an independent Grand Jury. The utter lack of evidence demonstrates that Mr. Campos was charged with a felony after the Government placed his name on a charging instrument which the Grand Jury foreperson then signed. This violated the Fifth Amendment to the Constitution.

## THE FIFTH AMENDMENT WAS VIOLATED

The Fifth Amendment promises that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on

a presentment or indictment of a Grand Jury." (emphasis added). A criminal indictment must issue from a Grand Jury, not some other source. In order for an indictment to be recognized as actually issuing from a Grand Jury, it must be the product of an investigative deliberation independent of both the prosecuting attorney and the court. United States v. Williams, 504 U.S. 36, 49, 112 S. Cr. 1735, 1743, 118 L. Ed. 2d 352 (1992).

"Recognizing [the] tradition of independence [of the grand jury], we have said that the Fifth Amendment's constitutional guarantee presupposes an investigative body acting independently of either prosecuting attorney or judge." (emphasis in original) (internal quotation marks and citations omitted); United States v. Dionisio, 410 U.S. 1, 18, 93 S. Cr. 764, 773, 35 L. Ed. 3d 67 (1973). (finding that a grand jury "must be free to pursue its investigations unhindered by external influence"); John Roe, Inc. v. United States, (In re Grand Jury Proceedings), 142 F. 3d 1416, 1425 (11th Cir. 1998)(while grand juries rely on the judiciary to issue and then enforce subpoenas it "performs its investigative and deliberative functions independently").

As judge Tjoflat noted, there are situations where courts would clearly invalidate an "indictment" if it was not the product of an independent Grand Jury.

7

> Assume that a prosecutor simply draws up an 'indictment,' has the grand jury foreperson sign it, and then used that document to obtain an arrest warrant for an alleged criminal offense. We would dismiss the 'indictment' out of hand as violative of the Fifth Amendment. This is because the 'indictment' would in no sense be the product of a constitutionally required grand jury proceeding. So, too, would we dismiss an indictment that was issued by a 'kangaroo grand jury'-one whose deliberations were so overborne by a prosecutor or judge that the indictment was, in effect, the prosecutor's or judge's handiwork, and not the result of a considered judgment by an independently functioning grand jury.

United States v. Sigma Intn'l, Inc., 244 F. 3d 841, 856 (11th Cir. 2001), rehearing en banc granted and opinion vacated by 287 F. ed 1325 (11th Cir. 2002). Sigma International was subsequently dismissed after a guilty plea. Mr. Campos recognizes that Sigma International has no precedential value. Nevertheless, other courts have used its analysis and reasoning to dismiss indictments where the grand jury was not acting independently of the prosecution. United States v. Leeper, 2006 WL 1455485 (W.D. N.Y. May 22, 2006). See also United States v. Acquest Development, LLC, 932 F. Supp. 2d 453 (W.D. N.Y. 2012)(indictment dismissed when grand jury independence compromised by revelation that witness compelled to testify under crime/fraud exception to attorney-client privilege); United States v. McKenzie, 678 F. 2d 629, 631 (5th Cir. 1982)(holding that an indictment may be dismissed "when prosecutorial misconduct amounts to overbearing

the will of the grand jury so that the indictment is, in effect, that of the prosecutor rather than the grand jury").

When the Grand Jury process is corrupted by the conduct of either a prosecutor or Judge, or "if there is grave doubt that the decision to indict was free from … substantial influence", then Courts should not hesitate to fashion a remedy. <u>Bank of Novia Scotia v. United States</u>, 487 U.S. 250, 256, 108 S. Ct. 2369, 2374, 101 L. Ed. 2d 228 (1988). When there is not an "investigative body acting independently of either prosecuting attorney or judge", the indictment in reality was not "of a grand jury" as required by the Fifth Amendment.

Here, the Grand Jury issued its indictment with no evidence that Mr. Campos committed any crime. Being an "associate" of another person or family who commit crimes is not by itself criminal. "Supervising workers in the fields" is not a crime. Being an "illegal alien" is not an independent crime, but even if it were, that is not the crimes alleged against Mr. Campos.

Scholars, judges and reformers for many years have described the failings of a system in which grand jurors willingly go along with prosecutors simply because they have no other option in a complex case. <u>United States v. Laurent</u>, <u>supra</u>, 861 F. Supp. 2d at 88-91. Mr. Campos recognizes that despite these criticisms of the

9

grand jury system there are limits to challenging the Grand Jury's deliberations. <u>Costello v. United States</u>, 350 U.S. 359, 76 S. Ct. 406, 100 L. Ed 397 (1956)(refusing to establish a rule permitting defendants to challenge indictments on the ground they were not supported by adequate or competent evidence). Nevertheless, as shown above courts also jealously guard the independence of the Grand Jury.

With all due respect to the effort expended by the Government on this case, there is simply no way to square the concept of an independent grant jury with the charges against Mr. Campos. The scant evidence presented to the Grand Jury is almost the same as putting his name on a piece of paper, calling that document an "indictment", asking the Grand Jury foreperson to sign the document, and then seeking an arrest warrant. There was simply no evidence Mr. Campos committed a crime, and certainly no evidence that he committed the three enormously serious crimes alleged against him. The charges against Mr. Campos were not the product of an independent investigative body acting on its own. Instead, this was the Department of Justice telling the Grand Jury who it should indict, without presenting any evidence that one of the Defendants committed any criminal act.

In <u>Bank of Nova Scotia</u>, <u>supra</u>, the Supreme Court addressed the issue of how to fashion remedies for violations of a Defendant's rights when that Defendant has been indicted by a validly constituted Grand Jury. The District Court dismissed an indictment because of prosecutorial misconduct plus numerous violations Fed.R.Crim.P. 6, the Jencks Act, the Defendant's Fifth and Sixth Amendments rights, and presentation of misinformation to the Grand Jury. Furthermore, the District Court relied on its supervisory authority when citing authority to dismiss then indictment.

The Supreme Court reversed the dismissal. The Court held that a District Court cannot dismiss an indictment for "nonconstitutional" errors in Grand Jury proceedings unless such errors prejudice a Defendant. When a Defendant asks for dismissal of an indictment for a "nonconstitutional" violation, the accused must overcome the harmless error inquiry set out at Fed.R.Crim.P. 52(a). Here, the indictment violated Mr. Campos's <u>constitutional</u> rights. He is not raising a "nonconstitutional" claim. As a result, the harmless error inquiry is inapplicable.

Defendant concedes that few courts have dismissed federal indictments in such situations. One reason for this because it will be the exceedingly rare U.S. Attorney's office that will seek

11

an indictment while presenting no evidence that the Defendant in question committed any crime. However, that is what happened here. The Fifth Amendment's promise of an indictment only after review by an independent Grand Jury was broken. That broken promise must be remedied by this Court, which should grant this Motion to Dismiss.

Dated: This 15th day of December, 2023.

Respectfully submitted,

*/s/ Paul S. Kish*
PAUL S. KISH
Georgia State Bar No. 424277
Attorney for JUAN ALVAREZ CAMPOS

Kish Law LLC
229 Peachtree Street, NE
Suite 2505
Atlanta, Georgia 30303
404-207-1338
paul@kishlawllc.com

CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing filing into this District's ECF System, which will automatically forward a copy to counsel of record in this matter.

Dated: This 15th day of December, 2023.

/s/ *Paul S. Kish*
PAUL S. KISH
Georgia State Bar No. 424277
Attorney for JUAN ALVAREZ CAMPOS

Kish Law LLC
229 Peachtree Street, NE
Suite 2505
Atlanta, Georgia 30303
404-207-1338
paul@kishlawllc.com